Sean P. O'CONNELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–99–00308–CR.

Court of Appeals of Texas,
Austin.

April 27, 2000.

Terry W. McDonald, Law Office of Terry McDonald, San Antonio, for appellant.

Eugene D. Taylor, Williamson County Atty., David Glickler, Asst. County Atty., Georgetown, for State.

Before Justices JONES, YEAKEL and PATTERSON.

LEE YEAKEL, Justice.

A jury found appellant Sean P. O'Connell guilty of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West Supp.2000). The county court at law assessed punishment at incarceration for 180 days and a $2000 fine, but suspended imposition of sentence and placed appellant on community supervision. Because the trial court improperly commented on the weight of the evidence in its jury charge, we will reverse the judgment of conviction.

### Factual Background

Officer Steve Shanks of the Williamson County Sheriff's Department stopped appellant's automobile at about 2:45 a.m. on August 13, 1997, after seeing appellant make an unlawful U-turn and change lanes several times without signaling. When the officer approached appellant's car on foot, the windows were rolled up and appellant did not immediately acknowledge the officer's presence. Appellant had difficulty finding the window controls and "fumbled" while getting his driver's license. The officer had the impression that appellant was confused or disoriented. When asked to get out of the car, appellant used the vehicle to steady himself. The officer testified that appellant's eyes were somewhat red and glassy, and that his speech was thick at first but became more intelligible as the encounter continued. The officer smelled the odor of alcoholic beverage on appellant's breath.

A second officer, Larry Chambers, drove to the scene of the stop as a backup. Officer Chambers explained the three standardized field sobriety tests used in Texas: the horizontal gaze nystagmus (HGN) test, the one-legged stand, and the walk-and-turn. Chambers testified at length about the training he had received in administering the HGN test and about the "clues" he was taught indicated intoxication. Chambers administered the HGN test on appellant and observed all six clues: a lack of smooth pursuit in each eye, nystagmus prior to 45 degrees in each eye, and nystagmus at maximum deviation in each eye.[1] Shanks later testified that he, too, administered the HGN test and saw the same clues. Appellant refused both officers' requests to perform the other field tests.

Appellant was arrested for driving while intoxicated and taken to the county jail. There, one hour after his arrest, he was videotaped refusing to take a breath alcohol test and refusing to perform any other sobriety test. The videotape was offered in evidence by the State. Shanks acknowledged that appellant looked "pretty good" on the videotape.

Patrick Dowd, a retired experimental psychologist, testified for the defense. Dowd stated that he and his colleagues at the United States School of Aerospace Medicine were among the first scientists in this country to study the effect of alcohol on horizontal gaze nystagmus. Briefly summarized, it was Dowd's opinion that while alcohol consumption has a discernable effect on human eye movement, the HGN field sobriety test promulgated by the National Highway Transportation Safety Administration (NHTSA) and taught to Texas law enforcement officers, including the two officers who administered the test to appellant, is not a reliable indicator of intoxication.

### Judicial Notice and Instruction

In *Emerson v. State*, 880 S.W.2d 759, 764–68 (Tex.Crim.App.1994), the court of criminal appeals took judicial notice of the literature regarding the HGN test. The court concluded that "the theory [that the

---

1. Nystagmus is a rhythmic oscillation of the eyes in a horizontal, vertical, or rotary direction. *See Emerson v. State*, 880 S.W.2d 759, 765 (Tex.Crim.App.1994). Horizontal gaze nystagmus is a variety of nystagmus that occurs when an individual's eyes are deviated to the lateral extreme. *See id.*

consumption of alcohol has a cognizable effect on human eye movement] underlying the HGN test is sufficiently reliable pursuant to [Texas Rule of Evidence] 702." *Emerson*, 880 S.W.2d at 768. The court further concluded that "the technique employed in the HGN test, as designed and promoted by NHTSA, is reliable pursuant to Rule 702" as an indicator of intoxication, but not as an indicator of precise blood alcohol content. *See id.* at 768–69.

After bringing *Emerson* to the attention of the trial court, and citing Texas Rule of Evidence 201, the State asked the trial court "to take judicial notice of the fact that the theory underlying the horizontal gaze nystagmus test which is concluded reliable under the Texas Rules of Criminal Evidence by the Court of Criminal Appeals." The court replied that he would do so. The State then asked the court "to take judicial notice of the fact that the technique employed in the horizontal gaze nystagmus test as designed and promoted by NHTSA is reliable under the Texas Rules of Criminal Evidence according to the Texas Court of Criminal Appeals." The court announced, "I will take judicial notice of the technique employed in the HGN test as designed and promoted by NHTSA and then that it's a reliable indicator of intoxication."

The court included the following instruction in the jury charge over appellant's objection that it was a comment on the weight of the evidence:

> You are instructed that the Court has taken judicial notice of the fact that the underlying theory [of] the Horizontal Gaze Nystagmus (HGN) test is sufficiently reliable. The Court has also taken judicial notice of the fact that the technique employed in the HGN test, as designed and promoted by N.H.T.S.A. is a reliable indicator of intoxication. You are instructed that you may, but are not required to, accept as conclusive any fact judicially noticed.

## Discussion

A trial judge must not, at any stage of the proceeding before the return of the verdict, make any remark calculated to convey to the jury the judge's opinion of the case. *See* Tex.Code Crim. Proc. Ann. art. 38.05 (West 1979). Similarly, the court must not express any opinion as to the weight of the evidence in its charge to the jury. *See* Tex.Code Crim. Proc. Ann. art. 36.14 (West Supp.2000).

In *Russell v. State*, 694 S.W.2d 207 (Tex. App.—Houston [1st Dist.] 1985), *aff'd*, 749 S.W.2d 77 (Tex.Crim.App.1988), a defense expert testified that the defendant was legally insane. This witness was the only expert to testify at the trial. The trial court later instructed the jury, "[Y]ou are not bound by the testimony offered by a witness qualified as an expert. You may give it the weight to which you find it is entitled and may weigh such testimony with all other evidence offered in this case." *Russell*, 694 S.W.2d at 209. The court of appeals concluded that this instruction was a comment on the weight of the evidence, citing opinions in which similar instructions regarding expert testimony had been held improper. *See id.* (citing *Florio v. State*, 532 S.W.2d 614, 618 (Tex. Crim.App.1976); *Simmons v. State*, 504 S.W.2d 465, 474 (Tex.Crim.App.1974); *Clark v. State*, 500 S.W.2d 107, 111 (Tex. Crim.App.1973)). The court observed, "The only defensive factual issue in the instant case was the question of insanity, and the instruction given commented subtly but adversely on the weight of the psychologist's testimony." *Id.* at 210.

The court of criminal appeals agreed. "[W]hen a judge, in his charge to the jury, suggests that certain evidence is true or untrue, that is a comment on the weight of the evidence." *Russell v. State*, 749 S.W.2d 77, 78 (Tex.Crim.App.1988). "[I]n determining whether an instruction is a comment on the weight of the evidence, the courts have seen fit to assess the probable effect of the instruction on the jury in the context in which it was given." *Id.* at

79. The court concluded that the instruction, while neutral on its face, "had the obvious effect of singling out the [expert's] testimony" and had the effect of "lead[ing] the jury to believe that there was more question as to the credibility of [the expert] ... than as to that of the other witnesses." *Id.* at 79–80.

In *Zani v. State*, 758 S.W.2d 233 (Tex. Crim.App.1988), the court addressed issues arising from the use of hypnotically enhanced testimony. Among other things, the court held that the trial court properly refused to give a cautionary instruction against placing undue reliance on such testimony. *See id.* at 245. "Such an instruction, though seemingly neutral on its face, has the effect nonetheless of singling out evidence and inviting jurors to pay it particular attention." *Id.* Citing *Zani*, the court held in *Matamoros v. State*, 901 S.W.2d 470, 477 (Tex.Crim.App.1995), that an instruction concerning the reliability of DNA evidence would constitute an impermissible comment on the weight of the evidence.

The instruction given in this cause was not neutral even on its face. Much of the testimony at appellant's trial concerned the HGN test. The State's police witnesses testified to their understanding of the principles underlying the test, their training in administering the test, and their observations when the test was administered to appellant. According to these witnesses, the test indicated that appellant was intoxicated. Appellant's expert witness vigorously challenged the test technique employed by the officers and testified that it would not produce an accurate indication of intoxication. The court's instruction that it had taken judicial notice that the HGN test "is a reliable indicator of intoxication" directly contradicted the defense expert and clearly endorsed the testimony of the State's witnesses.

As previously mentioned, the State moved for judicial notice of the reliability of the HGN test pursuant to rule 201. *See* Tex.R. Evid. 201. It is clear that the court believed itself bound by the rule both to take judicial notice and to instruct the jury as it did. *See* Tex.R. Evid. 201(d), (g).

By its terms, rule 201 only governs judicial notice of adjudicative facts. *See* Tex.R. Evid. 201(a). The reliability of the HGN test is a legislative fact, not an adjudicative fact. *See Emerson*, 880 S.W.2d at 764–65. Adjudicative facts are the facts of the particular case, while legislative facts have relevance to legal reasoning and the lawmaking process. *See* 1 Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 201.2, at 47–51 (Texas Practice 2d ed.1993) (distinguishing adjudicative and legislative facts). Because the reliability of the HGN test is a legislative rather than an adjudicative fact, rule 201 does not apply and the trial court was not required either to take judicial notice of or instruct the jury regarding the reliability of the test. *See id.* at 51.

We hold that the county court at law erroneously commented on the weight of the evidence when he instructed the jury on the reliability of the HGN test. Having been told the court's view of the reliability of this evidence, the jury was unlikely to reach a contrary conclusion. The court's instruction was calculated to injure appellant's rights and the harm is obvious. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). Because we sustain appellant's third issue, we do not reach the other issues. *See* Tex. R.App. P. 47.1.

The judgment of conviction is reversed and the cause is remanded to the county court at law for a new trial.