John WATTS, Appellant,

v.

The STATE of Texas.

No. 2115–01.

Court of Criminal Appeals of Texas.

March 12, 2003.

Paul Mewis, Houston, for Appellant.

Roger A. Haseman, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, joined by MEYERS, PRICE, JOHNSON, and HOLCOMB, JJ.

A jury convicted appellant of discharging raw sewage from a broken septic tank line on his property into or adjacent to water in the state, in violation of Water Code section 26.121(a)(1).[1] We must determine whether the trial judge, when taking judicial notice of a Texas water pollution case entitled *American Plant Food v. State*,[2] properly restricted her comments to notice of adjudicative facts, or whether she improperly commented on the weight of the evidence before the jury.[3] The court of appeals held that there was no error, either in taking judicial notice of *American Plant Food*, or in the substance of the instruction.[4]

We disagree. Because we find that the trial judge did not judicially notice an adjudicative fact, but rather directly addressed the jury on the application of a point of law, immediately before the parties rested and before she read the charge to the jury, we hold that the trial judge committed

---

1. TEX. WATER CODE ANN. § 26.121(a)(1) (Vernon 2000). The pertinent language reads:
 (a) Except as authorized by the commission, no person may:
 (1) discharge sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into or adjacent to any water in the state[.]

2. *American Plant Food Corp. v. State*, 587 S.W.2d 679 (Tex.Crim.App.1979).

3. We granted review of appellant's second and third grounds for review:
 2) The trial court and appellate court misread *American Plant Food Corp. v. State*, 587 S.W.2d 679 (Tex.Crim.App.1979) to hold that "a ditch" is water in the state when, in fact, the specific holding of *American Plant Food Corp. v. State, supra* [,] was "this drainage ditch *water*" was surface water. This being so, the oral instruction misstated the law to the jury.
 3) Even assuming for argument's sake that a drainage ditch is water in the state, the appellate court ignores prior case law when it summarily concludes that since the oral instruction was a correct statement of law, it, therefore, was not a comment on the weight of the evidence.

4. *Watts v. State*, 56 S.W.3d 694, 701–2 (Tex. App.-Houston [14th Dist.] 2001).

error by commenting on the weight of the evidence. Although we find that the trial judge's interpretation of our holding in *American Plant Food* was essentially correct, it was for the jury to decide if the drainage ditch water in *this* case constituted "water in the State." Accordingly, we reverse and remand the case to the court of appeals to conduct a harm analysis.

## I.

In June 1998, the Harris County Health Department received a nuisance complaint concerning trash, junk, and debris strewn about appellant's property. While investigating the complaint, Harris County Health Department workers discovered a serious sewage leak on appellant's property. Specifically, they found a large puddle of raw sewage adjacent to a round concrete lid, the kind that typically covers septic tanks. The workers also discovered a broken septic pipe that was discharging human waste and toilet paper from appellant's trailer directly onto the ground nearby. During rainfall, a shallow trench funneled this waste from appellant's property into a nearby county drainage ditch. This normally dry drainage ditch, in turn, diverted run-off into Coal Creek, which led to White Oak Bayou, then to Buffalo Bayou, the Houston Ship Channel, and ultimately into Galveston Bay.

Immediately before the State rested and closed its case-in-chief, the trial judge heard objections to the charge outside the jury's presence. Defense counsel stated:

MR. MEWIS: I object to the conclusion of the cases—of judicial knowledge section. I object to that being as a comment on the way to [*sic*] the evidence and also not an item that can be judicially noticed. I object because it's a issue of fact for the jury to determine. That's my objection.

MR. BILY: And for the record I was requesting a judicial instruction.

The jury re-entered and the trial judge asked whether the State had any further witnesses or evidence to present. The prosecutor responded:

MR. BILY: Judge, we have no further witnesses but we would request the Court take judicial notice of the Court of Criminal Appeals [*sic*] holding in [*American Plant Food v. State*, 587 S.W.2d 679].

THE COURT: Any objection from the defense?

MR. MEWIS: Same objection I think I already have it on the record.

MR. BILY: Judge, we request the holding in regard to a drainage ditch.

THE COURT: Ladies and gentlemen, the Court will take judicial notice that the Texas Court of Criminal Appeals in a 1979 case entitled American Plant Food versus the State of Texas. That Court of Criminal Appeals found that in that case where evidence showed that a pollutant escaped from the premises onto an adjacent field that formed a large pool and then flowed into a drainage ditch that in that case the drainage ditch was one of the types of surface water the legislature sought to protect under the Water Code Act.

Ladies and gentlemen of the jury, you are instructed that you may but are not required to exempt [*sic*] as conclusive any fact judicially noticed. Anything further from the State?

MR. BILY: No.

THE COURT: State rests and close?

MR. BILY: Rest and close.

THE COURT: Defense have anything further?

MR. MEWIS: Nothing further.

The trial judge then read the written charge to the jury. The jury charge tracked the language of the indictment and the Water Code statute.[5] The application paragraph stated, in part:

> Therefore, if you believe from the evidence beyond a reasonable doubt, that the defendant, John Watts, [did] ... unlawfully, intentionally, or knowingly discharge or allow the discharge of a waste and pollutant, namely sewage[,] into or adjacent to water in the state, namely, a drainage ditch located near 9134 West Little York[,] that caused or threatened to cause water pollution, said discharge not being in strict compliance with all the required permits or with an order issued or rule adopted by the appropriate regulatory agency ... or if you believe from the evidence beyond a reasonable doubt that the defendant [did] ... unlawfully, intentionally, or knowingly discharge or allow the discharge of a waste or pollutant, namely sewage, from a point source, namely a septic tank line, in violation of Water Code Section 26.121(a)(1), prohibiting the unauthorized discharge of sewage into or adjacent to any water in the state, you will find the defendant guilty.

During the State's closing argument, the prosecutor reviewed his burden of proof with the jury. Regarding the element, "water in the state," he told the jurors:

> MR. BILY: ... Really I'm not going to argue about the water in the State because I think when you get back there and look at the definition and you remember a hydrologist came in

here and testified as to the water in the State and you read the definition and you see it includes all beds and banks of all water course, I think it's pretty set. And judicial notice of the fact that another Court, a hirer [sic] Court, the highest Court in Texas has held that drainage ditches are entitled to the protection of this statute. I think that's pretty clear.

> MR. MEWIS: Objection, your Honor. I have to object. That's a misstatement you said, "a drainage ditch in that case."

> THE COURT: Sustained.

> MR. BILY: Drainage ditch in that case. Well, you know that now a drainage ditch in cases can be accepted as a water in the State.

The jury returned a guilty verdict, and the trial judge sentenced appellant to one year in the Harris County Jail, probated for two years, and a $10,000 fine ($9,000 probated).

Appellant appealed and argued that the trial judge erred, in the first place, by taking judicial notice of this Court's holding in *American Plant Food Corp.* because: 1) statements contained in judicial opinions are not a proper subject for judicial notice; and 2) additionally, the instruction constituted an improper comment on the weight of the evidence. Second, appellant contended that the trial judge misread the case, and thus compounded her first error by misstating the law to the jury.

The court of appeals disagreed, holding that there was no error in the trial judge's taking judicial notice of this Court's hold-

---

**5.** The abstract portion of the charge stated, *inter alia*, that:

"water" or "water in the state" means groundwater, percolating or otherwise, lakes, bays, ponds, impounding reservoirs, springs, rivers, streams, creeks, estuaries, wetlands, marshes, inlets, canals, the Gulf of Mexico inside the territorial limits of the state, and all other bodies of surface water, natural or artificial, inland or coastal, fresh or salt, navigable or nonnavigable, and including the beds and banks of all watercourses ad [sic] bodies of surface water, that are wholly or partially inside or bordering the state or inside the jurisdiction of the state.

ing in *American Plant Food Corp.*[6] It stated that it is "a rudimentary concept of our system of jurisprudence ... that a lower court must yield to [a] superior court's interpretation of a statute."[7] The court of appeals acknowledged that it would be error, "when a superior court's opinion is related to a particular scenario or fact situation, ... for a trial court to impose the holding in a factually dissimilar case."[8] Here, however, it said, "the *undisputed* facts [were] similar to those in *American Plant Food.*"[9]

The court of appeals explained that, in *American Plant Food,* "the issue presented to [the Court of Criminal Appeals] was whether a stagnant drainage ditch that flowed only intermittently" constituted " 'water in the state' " for purposes of the statute.[10] The court of appeals explained that this Court had held that the statute did not distinguish between " 'perennial and intermittent streams[,]' " and that therefore, " 'drainage ditch water [was] one of the types of surface water [that] the Legislature sought to protect.' "[11]

Turning to the facts of the instant case, the court of appeals noted that appellant himself testified that the drainage ditch in question drained a large area, including his property.[12] Presumably, from this evidence, the court of appeals inferred that there was no dispute: 1) that a county drainage ditch existed near appellant's property; and 2) that the drainage ditch intermittently contained water run-off from appellant's property and the surrounding area. Therefore, it concluded, any water entering that ditch constituted "waters of the state," as a matter of law, and thus the trial judge did not err when she took judicial notice of this Court's interpretation of a statute.[13] It also held that, because the judge's statement tracked the applicable statutory language and this Court's interpretation of it in *American Plant Food,* the trial judge did not comment on the weight of the evidence, but gave an accurate statement of the law, that a drainage ditch falls under the statutory definition of "water within the state."[14]

## II.

■ We must distinguish between a trial judge taking judicial notice of adjudicative facts, and taking judicial notice of the law. We must further distinguish between taking judicial notice of the law,[15] outside the jury's presence, and instructing the jury regarding a specific application of law to fact.

■ When a trial judge takes judicial notice of adjudicative facts, he authorizes the fact-finder to accept the truth or existence of those specific facts without requir-

6. *Watts v. State,* 56 S.W.3d 694, 701–02 (Tex.App.Houston[14th Dist.] 2001).

7. *Id.* at 701.

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.* at 701–02.

12. *Id.* at 702.

13. *Id.*

14. *Id.*

15. Article II of the Texas Rules of Evidence governs judicial notice of adjudicative facts and foreign law, but does not apply to judicial notice of the laws of the forum. Individual statutes, rules, and judicial decisions govern the latter. *See* Tex.R. Evid. 201–203; *see generally* Jack Weinstein & Margaret Berger, Weinstein's Evidence ¶ 200[02] ("The Trial Judge's Role in Applying Substantive Law: Finding the Law, Domestic and Foreign").

ing formal proof.[16] Adjudicative facts which may be judicially noticed are relevant to the ultimate issue in dispute, but are not themselves the subject of any controversy. Such facts may be judicially noticed only if they are not subject to reasonable disagreement.[17] For instance, in a criminal case, for purposes of establishing venue, a trial or appellate judge might take judicial notice that the City of Austin, where the offense allegedly occurred, is located in Travis County.[18] The parties might dispute the fact that the offense occurred at all, or if it did, that it occurred in Austin, but not that the City of Austin is in Travis County. To insist that a party prove the commonly known (or at least, readily ascertainable) fact of the city's location would waste limited judicial resources and defy common sense.[19] Rule 201 of the Texas Rules of Evidence governs judicial notice of these adjudicative facts.

■ Judicial notice of state law, in contrast, is not governed by Article II,[20]

but by individual statutes and cases. Texas courts can, of course, take judicial notice of the laws of this State.[21] In determining the content, scope, and meaning of the applicable law, the judge may look to statutes, rules, case law, and legislative history. The judge is not restricted in his investigation into the content or applicability of the laws of the forum; he may make an independent search for persuasive data or rest content with the materials the parties provide.[22]

■ A trial judge might, for example, be requested to rule on a defendant's motion for directed verdict, alleging that the State had failed to prove an essential element of its case—that certain sewage running into a drainage ditch constituted "water in the state." In that case, the trial judge might well take judicial notice of the existence, content, and applicability of one of this Court's decisions, such as *American Plant Food*, in ruling upon that motion for directed verdict. That is a perfectly ap-

---

**16.** *See* GRAHAM C. LILY, AN INTRODUCTION TO THE LAW OF EVIDENCE § 7, at 13 (1978); McCORMICK ON EVIDENCE § 328, at 919–20 (3rd ed.1984); 9 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2565, at 694 (Chadbourn rev.1981). The taking of judicial notice promotes judicial efficiency:

> The whole purpose of the rule of judicial notice is one of convenience to save time in the trial by eliminating the need for proof of facts about which there is really no controversy.

*James v. State*, 546 S.W.2d 306, 310 (Tex. Crim.App.1977). Due to the risk of unfairness to the party against whom judicial notice is taken, however, judicial notice is limited to facts that are considered *common knowledge* or readily verifiable. Kenneth C. Davis, *Judicial Notice*, 55 COLUM. L.REV. 945, 952 (1955).

**17.** *See* STEVEN GOODE, OLIN GUY WELLBORN III, M. MICHAEL SHARLOT, TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE CIVIL AND CRIMINAL § 201.2, at 47 (3rd. ed.1993).

**18.** *See Sixta v. State*, 875 S.W.2d 17, 18 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd).

**19.** *See Harper v. Killion*, 345 S.W.2d 309, 311 (Tex.Civ.App.-Texarkana 1961), *aff'd*, 162 Tex. 481, 348 S.W.2d 521 (Tex.1961).

**20.** Judicial notice of the existence and content of *local laws and ordinances, as well as the* contents of the Texas Register and Administrative Code, is governed by Rule 204.

**21.** *Legg v. State*, 594 S.W.2d 429, 432 (Tex. Crim.App.1980).

**22.** *See* Edmund M. Morgan, *Judicial Notice*, 57 HARV. L.REV. 269, 270 (1944); *see also* CHRISTOPHER B. MUELLER & LEONARD C. KIRKPATRICK, FEDERAL EVIDENCE § 59 at 294 (2d ed.1994)(noting that trial judge "may request or require counsel to assist in making the determination [of applicable law], either by argument or by submitting memoranda or briefs").

propriate exercise of judicial notice of law. But this type of judicial notice is *always* taken outside the presence of the jury.[23]

 The jury, however, determines questions of fact in light of the law as it is finally determined and given to it by the court in the written jury charge.[24] All of the applicable law is contained within that written jury charge. The jury charge does not contain excerpts from judicial decisions or any statements that an appellate court

has held that proof of "X" fact fulfills "Y" legal requirement.

## III.

 In this case, the trial judge directly addressed the jury at a crucial time in the proceedings and instructed it as to this Court's interpretation of the pertinent Water Code statute in a prior case.[25] The trial judge's instruction gave a fairly accurate,[26] if somewhat simplified,

---

**23.** *See* MUELLER & KIRKPATRICK, *supra* (noting that all judicial notice of law falls within the general category of "determining the law" which is "a function for judges, not juries"); WEINSTEIN & BERGER, *supra,* ¶¶ 200[06]-[08]; *see also* Fed.R.Evid. 201, advisory committee note ("[i]t is apparent that [the] use of non-evidence facts in evaluating the adjudicative facts of the case is not an appropriate subject for a formalized judicial notice treatment").

**24.** Tex.Code Crim. Proc. art. 36.14 (trial judge shall deliver to jury "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence ...."). This statute forbids the judge from "any discussion in the jury's presence of evidence adduced at trial which might suggest to the jury the judge's personal estimation of the strength or credibility of such evidence or which might tend to emphasize such evidence by repetition or recapitulation." *Atkinson v. State,* 923 S.W.2d 21, 24 (Tex.Crim.App.1996), *overruled on other grounds by Motilla v. State,* 78 S.W.3d 352 (Tex.Crim.App.2002).

**25.** This situation is similar to that in which appellate courts may measure the sufficiency of evidence by resort to a judicial presumption, but the jury is never told of that legal presumption. For example, Texas courts employ a legal "presumption" that "the act of breaking and entering [a person's home] at nighttime raises a presumption that the act was done with the intent to commit theft." *Browning v. State,* 720 S.W.2d 504, 505 (Tex.Crim.App.1986). However, a judicial instruction to the jury on this legal "presumption" is error and a comment on the weight of the evidence. *Id.* at 507; *see also Mercado v. State,* 718 S.W.2d 291, 292–93 (Tex.Crim.App.1986) (impermissible comment on weight of evi-

dence for trial judge to instruct jury that it could presume a defendant's intent to kill from the use of a deadly weapon).

The trial judge and the appellate courts may use these judicial presumptions as aids in assessing the sufficiency of evidence in a particular case, but it is solely the jury's prerogative to find the facts—here, did this sewage discharge into or adjacent to "water in the state" for purposes of the applicable Water Code statute if it reached or leached into the drainage ditch? While the trial or appellate courts assess the sufficiency of the evidence offered to prove the fact by applying *American Plant Food,* the jury need not and should not be informed of the existence or applicability of *American Plant Food* in making its factual finding.

**26.** Appellant argues that, in this case, the trial judge left out the crucial word "water" from the phrase "this drainage ditch water" contained in *American Plant Food* when she orally instructed the jury. Appellant is correct. A dry and empty drainage ditch was not the type of ditch to which this Court referred in *American Plant Food.* We perceive this omission of the word "water" as inadvertence on the part of the trial court, but it demonstrates the hazards of orally instructing the jury on the content and applicability of judicial decisions. The court of appeals stated that the trial court's statement was essentially correct as "the *undisputed* facts [in this case] are similar to those in *American Plant Food.*" 56 S.W.3d at 701 (emphasis in original). Because we conclude that the trial court erred in giving any oral instruction concerning the holding in *American Plant Food,* the court of appeals should consider whether the omission of the word "water" in that improper instruction was harmful.

account of this Court's holding in *American Plant Food.* In that case, we held:

> Viewing the evidence in the light most favorable to the verdict, we hold it sufficient to prove a violation of Section 21.552, supra, as alleged in the information. The evidence shows that the pollutant escaped from American Plant Food's premises onto the adjacent field. It formed a large pool and then flowed into a drainage ditch. This drainage ditch contained not only waste from the factory, [*sic*] another stream of water also flowed into it from the northeast. The water in this stream had a neutral pH of 7 until it combined with the very acidic solution discharged by appellant. The water polluted was not merely that in the pool formed by the discharge but all the water in the ditch and that flowing into it. It is readily apparent from the above broad definitions that *this drainage ditch water* is one of the types of surface water the Legislature sought to protect, and we so hold.[27]

We did not hold that *all* drainage ditches or all materials that flow into a drainage ditch necessarily constitute water in the state, as a matter of law. Our holding stated only that under the specific facts of that case, that particular drainage ditch water met the statutory definition. Thus, the evidence in that particular case was sufficient to support the jury's verdict. The conclusion, however, that some drainage ditch water may be the type of surface water that the Legislature sought to protect in the Water Code, is *not* a notorious or easily-verifiable adjudicative fact subject to judicial notice under Texas Rule of Evidence 201. By drawing attention to our holding of *American Plant Food* shortly before the jury began its deliberations, the trial judge may have inadvertently communicated an opinion concerning the weight of the evidence in this case.[28]

The State argues that the issue of whether a drainage ditch is water "should no longer be litigated in every case involving a discharge into or adjacent to a drainage ditch. The issue has been decided as a matter of law and is clearly a holding upon which the State is entitled to rely."

---

**27.** 587 S.W.2d at 682 (emphasis added).

**28.** *See, e.g., O'Connell v. State,* 17 S.W.3d 746, 748–49 (Tex.App.-Austin 2000, no pet.) (harmful error for trial court to instruct jury that it had "taken judicial notice of the fact that the underlying theory [of] Horizontal Gaze Nystagmus (HGN) test is sufficiently reliable. The Court has also taken judicial notice of the fact that the technique employed in the HGN test, as designed and promoted by N.H.T.S.A. is a reliable indicator of intoxication"). The court of appeals held that the trial court's statement in *O'Connell* was an improper instruction concerning judicial notice of a *legislative* fact—the scientific reliability of a specific testing procedure. Trial courts may not instruct juries that the judge has taken judicial notice of legislative facts. Such facts have relevance to legal reasoning, the admissibility of other evidence, and the lawmaking process. Legislative facts may provide the rationale for a legal ruling, but they are not an appropriate topic for a judicial notice instruction to the jury.

The judicial notice in this case would have been that of a legislative fact had the trial judge simply recited the pertinent sentence from *American Plant Food* without mentioning that it was an excerpt from a specific case: "It is readily apparent from the ... broad definitions [in the Water Code] that this drainage ditch water is one of the types of surface water the Legislature sought to protect ..." That instruction would have been an improper use of judicial notice of a legislative fact, rather than an improper judicial instruction concerning the applicability of a specific legal holding. In any event, the jury is instructed *only* on judicial notice of adjudicative facts under Rule 201, not when the trial court takes judicial notice of foreign and sister-state laws, or Texas ordinances and regulations under Rules 202–204, or when it takes notice of legislative facts.

The State would be correct if the Water Code explicitly stated: "a drainage ditch is water." It does not.[29]

We find that the trial judge did not judicially notice an adjudicative fact, but rather directly addressed the jury on the specific application of law to facts in a different judicial decision, immediately before the parties rested and before she read the charge to the jury. We therefore hold that the trial judge committed error by commenting on the weight of the evidence. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court for it to conduct a harm analysis.

KEASLER, J., filed a concurring opinion, joined in Part I by WOMACK, J.

KELLER, P.J., and HERVEY, J., concurred in the judgment.

KEASLER, J., delivered this concurring opinion. WOMACK, J., joined Part I.

I disagree with the majority's discussion of judicial notice and its inclusion of statements unnecessary to the resolution of this case. I therefore concur only in the result.

**I.**

The majority distinguishes between "taking judicial notice of adjudicative facts,

and taking judicial notice of the law."[1] But judicial notice applies only to facts, not law. Professor Weinstein points out that courts sometime state that they are taking judicial notice of a law, and this is not appropriate.[2] He explains that the Advisory Committee to Federal Rule 201 felt that "the process by which the court informs itself of the applicable law is not a proper concern of the rules of evidence."[3]

Granted, as the majority points out, Evidence Rules 202 through 204 do discuss taking judicial notice of certain laws. But they are the laws of other states, foreign countries, or city and county ordinances. Controlling authority is something we expect judges to review as part of their duties in every case. There is no need for taking judicial notice of it.

The majority relies on our opinion in *Legg v. State*[4] as authority for taking judicial notice of state law.[5] In that case, the defendant argued that the State failed to prove that the Taylor County Jail was a penal institution. We took judicial notice that the Taylor County jail was a jail.[6] In doing so, we stated that "courts can take judicial notice of the laws of this State."[7] But we were not actually taking judicial notice of a law. We were taking judicial

---

29. Under the State's theory, a trial judge should instruct the jury in an aggravated robbery case that it was taking judicial notice that in *McCain v. State*, 22 S.W.3d 497 (Tex. Crim.App.2000), the Court of Criminal Appeals held that a butcher knife used in that case was a deadly weapon, therefore it could accept the fact that the butcher knife used in this case was also a deadly weapon. In both instances, the judge would be improperly commenting on the weight of the evidence because the statutory law does not explicitly define a "butcher knife" as a deadly weapon or "a drainage ditch" as water in the state. In both cases, a jury may reasonably conclude that a particular butcher knife is a deadly weapon or specific material in a drainage ditch constitutes water in the state, but in

neither instance should the jury be instructed that an appellate court has held it to be so.

1. *Ante,* op. at 609.

2. 1 WEINSTEIN'S FEDERAL EVIDENCE § 201.03[3] (2d ed.2002).

3. *Id.* at § 201.03[3].

4. 594 S.W.2d 429 (Tex.Crim.App.1980).

5. *Ante,* op. at 610.

6. *Legg,* 594 S.W.2d at 432.

7. *Id.*

notice of a fact. We seemed to recognize that ourselves when we explained that "[i]f a fact is judicially noticed, it need not be pleaded or proved" and, therefore, "[t]he failure of the State to prove that Taylor County Jail is a penal institution as defined in the Penal Code did not render the evidence insufficient to sustain the conviction."[8]

I agree with the majority that the trial judge erred in this case by "directly address[ing] the jury on the specific application of law to facts in a different judicial decision."[9] I also agree with the majority that the trial judge was not taking judicial notice of either an adjudicative or a legislative fact. But neither was the judge's comment taking judicial notice of a law. Rather, as the majority also recognizes, the judge's comment "communicated an opinion concerning the weight of the evidence in this case,"[10] and that was inappropriate.

## II.

I must also register my disapproval of the majority's inclusion of statements not necessary to the resolution of this case:

- The Court uses as examples fact situations inapposite to this case.[11]
- The Court discusses judicial presumptions used in reviewing resolution of sufficiency claims on appeal[12] when that issue is not before us.

- The Court discusses the trial judge's apparent "inadvertence" in excluding the word "water" from the charge and concludes that the court of appeals should consider whether this omission harmed Watts,[13] although this issue is also not before us.

Statements which are "unnecessary to the issue upon which the ... Court ... is writing" are dicta.[14] Dicta include "[a]n opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication; an opinion expressed by a judge on a point not necessarily arising in a case; an opinion of a judge which does not embody the resolution or determination of the court, and made without argument, or full consideration of the point; not the professed deliberate determination of the judge himself."[15]

It is dangerous to include dicta in court opinions. "With neither case facts to sharpen analysis nor help from advocates' arguments, a dictum-issuing court necessarily writes broadly and ambiguously."[16] Additionally, "a court that employs a rule broader than the facts before it may properly consider the rule in relation to that particular case; however, the rule's potential bearing on all other cases will rarely be completely contemplated by the court."[17] Finally, "[i]t is often unwise for

8. *Id.*

9. *Ante,* op. at 613.

10. *Id.*

11. *Id.* at 612 and 613 n. 29.

12. *Id.* at 611 n. 25.

13. *Id.* at 611 n. 26.

14. Michael Sean Quinn, *Symposium on Taking Legal Argument Seriously: Argument and Authority in Common Law Advocacy and Adju-*

*dication: An Irreducible Pluralism of Principles,* 74 CHI.-KENT L.REV. 655, 713 (1999).

15. *Grigsby v. Reib,* 105 Tex. 597, 602, 153 S.W. 1124, 1126 (1913).

16. Richard B. Cappalli, *What is Authority? Creation and Use of Case Law by Pennsylvania's Appellate Courts,* 72 TEMPLE L.REV. 303, 310 (1999).

17. Joshua C. Dickinson, *Casenote: Standing Requirements for Intervention and the Doctrine of Legislative Standing: Will the Eighth Cir-*

an appellate court to discuss issues not implicated by the facts of the case at bar, for it is difficult to test the operational dynamics of a legal rule being assembled in a factual vacuum." [18]

As Chief Justice Warren has explained, "[i]t has not been the custom of the Court, in deciding the cases which come before it, to write lengthy and abstract dissertations upon questions which are neither presented by the record nor necessary to a proper disposition of the issues raised." [19] He complained that the majority's opinion in that case "departed from this custom and is in the nature of an advisory opinion, for it attempts to resolve with finality many difficult problems which are at best only tangentially involved here." [20] The majority's opinion in this case does the same thing.

Given the prevalence of dicta in court opinions and the standard complaints from dissenters, "[o]ne wonders why obiter dicta are even present." [21] One author has some theories:

> Sometimes, they are included for reasons of contrast. Sometimes, judges appear to be writing short essays on the law. Perhaps the judge wants the opinion included in a case book. Perhaps he is bucking for another job. Perhaps the judge writes well and is looking for a mode of self-expression. Perhaps he does not write the opinions at all but leaves them to law clerks who do not know any better, or who think they still

are writing term papers. Perhaps all of these reasons apply, and perhaps there are others as well. [22]

Regardless of the reasons, the urge to write beyond what is necessary in any case should be tamed. Justice Selya of the United States Court of Appeals for the First Circuit argues that appellate courts should strive for prudence in their opinions. "[P]rudence counsels judges not to reach out and decide large, controversial issues in the absence of a necessity to do so. The prudent jurist will typically decide cases on the narrowest, surest ground available, leaving tougher calls, with broader implications, for future cases that squarely present them." [23]

I concur in the Court's judgment.

cuit "Stand" by Its Mistakes in Planned Parenthood of Mid–Missouri & Eastern Kansas, Inc. V. Ehlmann?, 32 Creighton L.Rev. 983, 1024 (1999).

18. Evan Tsen Lee, Deconstitutionalizing Judiciability: The Example of Mootness, 105 Harv. L.Rev. 605, 649 (1992).

19. Culombe v. Connecticut, 367 U.S. 568, 635–36, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (Warren, C.J., concurring).

20. Id.

21. Quinn, 74 Chi.-Kent L.Rev. at 713.

22. Id.

23. Hon. Bruce M. Selya, Essay: Thoughts from the Bench: The Confidence Game: Public Perceptions of the Judiciary, 30 New Eng. L.Rev. 909, 916 (1996).