# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00473-CR

**David Ruiz Caballero Jr., Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. D-1-DC-09-201791, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The State charged defendant David Caballero with family violence assault after he allegedly assaulted JoAnn Hernandez on April 1, 2009. *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2009). At the conclusion of trial, the jury found Caballero guilty and assessed punishment at 40 years' imprisonment. In his first and second points of error on appeal, Caballero argues that the evidence was legally and factually insufficient to show that Caballero was in a dating relationship with Hernandez at the time of the offense and that the offense occurred in Travis County. In his third point of error, Caballero argues that the trial court abused its discretion in (1) denying his motion for a mistrial after Hernandez made reference to prior assaultive acts by Caballero during her testimony, and (2) denying Caballero's motion for a continuance or a mistrial after a police video recording of his arrest was discovered during trial. We affirm the judgment of the trial court.

## BACKGROUND

Hernandez testified that she first met Caballero approximately two years prior to the incident underlying the conviction in this case.[1] She did not start dating Caballero immediately, as she was in a relationship with another man at the time. She testified, however, that she and Caballero "eventually did become a couple." Hernandez, who has been homeless for the last ten-to-fifteen years, testified that she and Caballero had been "together for a while" prior to the alleged assault. Specifically, Hernandez testified that she had been living with Caballero "on and off [for] eight months," the two of them staying at a campsite near the intersection of William Cannon Drive and Pleasant Valley Road in Austin.[2] When asked if she and Caballero were "in a relationship together" and "living together" on April 1, 2009, Hernandez responded, "Yes."

On March 31, 2009, Caballero and Hernandez bought numerous 24-ounce cans of malt liquor with money that had been sent to Caballero from his family in San Antonio.[3] Hernandez testified that she drank fifteen 24-ounce cans of malt liquor between 6:00 p.m. on March 31 and the evening of April 1, 2009. Hernandez testified that during the evening of April 1, "we were getting along, we were holding each other. Everything was fine." She also testified that the two of them were "doodling" on her leg, drawing a heart and writing, "David and JoAnn forever." A photograph of the drawing was admitted at trial.

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

[2] According to Peter Dennis, the Austin police officer who investigated the incident underlying the charges in this case, there is a transient population of five-to-ten homeless people living in the woods near the intersection at any given time.

[3] Hernandez testified that Caballero's family sent the money so that she and Caballero could go to San Antonio to visit them.

2

Later in the evening, however, Hernandez testified that Caballero told her he was going to "beat her ass." According to Hernandez, both she and Caballero were intoxicated at the time, as they had been drinking since purchasing the malt liquor the previous day. Hernandez testified that, after she turned away from him, Caballero "popped" her in the back of the head and pulled her hair. Hernandez then tried to flee from Caballero, running up a hill and onto a bridge near the intersection of William Cannon Drive and Pleasant Valley Road. Caballero caught her after she had run into the roadway on the bridge. He spun her around, pushed her up against a railing on the bridge, and put his hands around her neck. Hernandez testified that she was unable to breathe as Caballero was choking her, and that his hands caused her pain. Photographs of Hernandez's neck taken after the incident and admitted at trial showed red marks where Caballero's hands had been.

Monika Alejo, an eighteen-year-old receptionist at a property management company, testified that she was driving on the bridge near the intersection of William Cannon and Pleasant Valley on April 1, 2009.[4] She saw a man and a woman run across the street near the intersection. She testified that the man was attacking the woman, and that he had his hands around her neck and was leaning her over the railing on the bridge. Alejo testified that the woman was struggling to get away, and that the man looked as though he was going to push the woman off the bridge. Alejo slowed down her car and called 911.[5]

---

[4] While the State's witnesses agreed that the incident occurred on the evening of April 1, 2009, their testimony conflicts regarding what time the incident occurred. According to Alejo, she witnessed Caballero and Hernandez run into the street between 10:30 and 11:00 p.m. Officer Dennis testified that he arrived on the scene between 9:30 and 10:00 p.m.

[5] Alejo testified that she witnessed the incident for a total of five or ten seconds and saw the man and woman in her headlights from roughly 30 feet away.

3

Officer Peter Dennis of the Austin Police Department (APD) was assigned to nighttime patrol that evening. He was dispatched to the intersection of William Cannon and Pleasant Valley on a disturbance with violence, with the dispatch including details that a man was choking a woman. When he arrived at the scene, he saw a man (whom he identified at trial as Caballero) with his hands around the neck and upper chest of a woman (whom he identified at trial as Hernandez).[6] According to Dennis, Caballero had bent Hernandez over the railing of the bridge, which had a five-to-ten foot drop to a greenbelt area below with grass and loose rocks. Dennis was worried for Hernandez's safety.

Dennis ordered Caballero to release Hernandez and then ordered him to the ground. According to Dennis, Caballero smelled of alcohol and appeared to be intoxicated. Dennis spoke to Hernandez, who was crying and appeared to be extremely upset. According to Dennis, she told him that she had been having a verbal dispute with Caballero about "family matters." Dennis testified that Hernandez also told him that Caballero had grabbed her and struck her in the head three times with a closed fist. She then explained that she had been trying to get away from Caballero to go to a nearby gas station to make a phone call. Dennis noted that Hernandez had visible injuries, including red marks on her neck. Dennis arrested Caballero.

The State charged Caballero with family violence assault. *See* Tex. Penal Code Ann. § 22.01. During Hernandez's testimony, defense counsel moved for a mistrial after she alluded to a prior assaultive act by Caballero, stating that she told Caballero, "[Y]ou are not going to beat my ass, you are not going to hit me in my face ever again in your life." *See* Tex. R. Evid. 404(b)

---

[6] According to Dennis, he had the overhead lights on his patrol car illuminated, which provided enough light to see the people.

(admissibility of other crimes, wrongs, or acts). Outside of the presence of the jury, the trial court instructed the witness not to testify about any prior arguments or assaultive acts. Defense counsel moved for a mistrial, and the trial court denied the motion.

During Dennis's cross-examination, he testified that, while the recording device in his patrol car would normally have recorded the incident, he had no idea if a recording existed in this case. During trial, however, APD discovered the recording and provided it to the prosecution and defense. After the trial court excluded the video from evidence, explaining that it had not been turned over to the defense in a timely fashion, defense counsel moved for a continuance to further review the video or, in the alternative, a mistrial. The trial court denied the motions.

At the conclusion of the guilt/innocence phase of the trial, the jury found Caballero guilty of family violence assault, a third-degree felony.[7] During the punishment phase of the trial, the State introduced evidence that Caballero had been convicted of two prior felonies. The jury found the penalty paragraphs of the indictment to be true, resulting in a punishment range of 25 to 99 years' imprisonment or life imprisonment. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2009) (penalties for repeat and habitual felony offenders). The jury assessed punishment at 40 years' imprisonment, and this appeal followed.

**STANDARD OF REVIEW**

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light

---

[7] A prior conviction of family violence assault was stipulated to at trial, making the instant offense a third-degree felony. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A) (West Supp. 2009).

5

most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

In reviewing the factual sufficiency of the evidence, we consider all the evidence in a neutral light, while giving due deference to the fact-finder's determination. *See Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003); *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). We must then determine whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *See Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009).

In a jury trial, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). We may not reweigh the evidence and substitute our judgment for that of the fact-finder. *King v. State*, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000).

An appellate court reviews a trial court's ruling on a motion for a mistrial using an abuse-of-discretion standard of review. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. *Webb*, 232 S.W.3d at 112. Thus, a trial court abuses its discretion in denying a motion for a mistrial only when no reasonable view of the record could support the trial court's ruling. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

We review a trial court's ruling on a motion for a continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996).

## DISCUSSION

### *Legal and Factual Sufficiency*

In his first and second points of error on appeal, Caballero argues that the evidence was legally and factually insufficient to support his conviction. Specifically, Caballero argues that there was insufficient evidence to prove that he was in a dating relationship with Hernandez at the time of the offense, and also contends that the State did not meet its burden to show that the offense occurred in Travis County.

### *Dating Relationship*

Under the penal code, a defendant commits family violence assault if he has previously been convicted of assault and is then convicted of assault against a person with whom he had a "dating relationship" as defined in the family code. *See* Tex. Penal Code Ann. § 22.01(b)(2); Tex. Fam. Code Ann. § 71.0021(b) (West Supp. 2009). Under the family code, a "dating relationship" is defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." Tex. Fam. Code Ann. § 71.0021(b). The existence of such a relationship shall be determined based on consideration of: (1) the length of the relationship, (2) the nature of the relationship, and (3) the frequency and type of interaction between the persons involved in the relationship. *Id.* Applying these factors, the court of criminal appeals

7

has held that evidence of a "dating relationship" was sufficient when the record showed that the defendant and the victim each "occasionally . . . spent the night with the other at the other's residence" from January 2005 through February 8, 2005. *Villarreal v. State*, 286 S.W.3d 321, 324 (Tex. Crim. App. 2009).

In this case, regarding the length of the relationship, the State presented evidence that Caballero and Hernandez had been living together "on and off for eight months," a sufficient period of time to show a dating relationship. *See id.* (finding dating relationship based on interaction over approximately five weeks). Regarding the nature of the relationship, Hernandez testified that she and Caballero were "a couple" and "in a relationship," and also stated that she did not begin her "relationship" with Caballero when she first met him because she was dating another man at the time. Finally, regarding frequency and type of interaction, Hernandez testified that she and Caballero had been "living together" at the campsite, and that on the night in question the couple had been "holding each other" and had drawn a heart on Hernandez's leg accompanied by text that read, "David and JoAnn forever."

This evidence would allow a rational trier of fact to find beyond a reasonable doubt that Caballero and Hernandez were in a dating relationship at the time of the offense. Further, though evidence was presented at trial that Hernandez had been in relationships with other men and had been convicted of prostitution, the evidence that she and Caballero were in a dating relationship is not so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. Accordingly, we conclude that the evidence of a dating relationship was legally and factually sufficient.

8

*Venue*

Next, Caballero argues that the evidence is legally and factually insufficient to prove that the offense took place in Travis County. Venue is presumed to have been proven at trial unless it is made an issue at trial or the record affirmatively shows otherwise. Tex. R. App. P. 44.2(c)(1); *Lozano v. State*, 958 S.W.2d 925, 929 (Tex. App.—El Paso 1997, no pet.). Since venue is a jurisdictional fact, not an element of the offense, it may be established by a preponderance of the evidence, whether circumstantial or direct. *See* Tex. Code Crim. Proc. Ann. art. 13.17 (West 2005); *Gonzales v. State*, 784 S.W.2d 140, 142 (Tex. App.—Austin 1990, no pet.).

In this case, venue was not challenged at trial, which was held in Travis County. Further, the record does not affirmatively show that the offense took place in a different county. *See Cockburn v. State*, No. 02-07-00062-CR, 2008 Tex. App. LEXIS 196, at *2 (Tex. App.—Fort Worth Jan. 10, 2008, no pet.) (mem. op., not designated for publication) (upholding presumption of venue because "Appellant directs us to no evidence in the record showing that the offense occurred anywhere else"). Rather, the State presented evidence that the offense took place in Travis County. During Dennis's testimony, the prosecutor, after asking numerous questions about the location of the incident, asked, "And this location, was it in Travis County?" Dennis responded in the affirmative, and while the specific question regarding "this location" is somewhat vague, the context of the question indicates that the prosecutor was referring to the location of the offense near the intersection of William Cannon Drive and Pleasant Valley Road. Further, Dennis testified that the intersection where the crime scene was located was in his Southeast Austin patrol district. As the evidence indicates that the offense took place in the City of Austin, this Court may take judicial

9

notice that the crime scene is in Travis County. *See Watts v. State*, 99 S.W.3d 604, 610 (Tex. Crim. App. 2003) ("[I]n a criminal case, for purposes of establishing venue, a trial or appellate judge might take judicial notice that the City of Austin, where the offense allegedly occurred, is within Travis County."); *see also Republic Acceptance Corp. v. Thompson*, 384 S.W.2d 792, 793 (Tex. Civ. App.—Austin 1964, writ ref'd n.r.e.) (taking judicial notice that Austin is in Travis County). Accordingly, we conclude that the State did not fail to meet its burden regarding venue.

As the evidence showing a dating relationship and venue is legally and factually sufficient, Caballero's first and second points of error are overruled.

***Motions for Mistrial and Continuance***

In his third point of error, Caballero argues that the trial court abused its discretion in denying his motions for a mistrial following Hernandez's statements regarding prior crimes, wrongs, or acts, and for a continuance or a mistrial following the discovery of a police video of Caballero's arrest.

*Other Crimes, Wrongs, or Acts*

Near the beginning of Hernandez's direct examination by the prosecutor, the following exchange occurred:

> PROSECUTOR: Can you describe what happened that night on April 1, 2009?
>
> HERNANDEZ: That evening, we were drinking heavily, and we were drinking for like two days.
>
> PROSECUTOR: What were you drinking?

HERNANDEZ: Schlitz Malt Liquor Bull Gold.

PROSECUTOR: Okay.

HERNANDEZ: And we were drinking for about a day and a half actually, and we were talking and playing and eating and stuff and going through our little emotional routines when people get drunk with their mood swings and things, crying and laughing and all that, and he went to the bathroom. And he comes back a little later, like a little later, and he looks at me and he says, I'm obligated to beat your ass, and I'm like, what? And he walks towards me and I go, oh, no, no, you're not, you are not going to beat my ass, you are not going to hit me in my face ever again in your life. I told him that—I said I got to go to the bathroom real bad, if we're going to have to do this, let's handle it up, let's do it right. Ain't no way, but he was just tripping. I knew he was drunk. But I was drunk, too, but not that drunk to get my butt whipped or anything.

Following this testimony, defense counsel approached the bench and stated, "[S]he does have a tendency to bring up these past bad acts, like she just said there that he—not going to hit her again, so I object to the admission of that and request an instruction and move for a mistrial." *See* Tex. R. Evid. 404(b) (admissibility of evidence of other crimes, wrongs, or acts).[8] The trial court overruled defense counsel's objection and denied the motion for a mistrial. The trial court then instructed the

---

[8] The State argues that any error regarding Hernandez's statements was waived because defense counsel "never mentioned Rule 404(b) as the basis of his objection, . . . and he did not discuss prejudice" when making his objection to the trial court. Under the rules of appellate procedure, counsel must object "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1). In this case, the objection was specific enough and the context clear enough to apprise the trial court of the defense's challenge. We note, however, that defense counsel did not object that Hernandez's answers were nonresponsive, *see* Tex. R. Evid. 611(a), make a motion to strike the testimony, or specify whether he was requesting an instruction that the jury disregard Hernandez's statements or consider them only for a limited purpose. *See id.* R. 105(a).

11

witness, out of the presence of the jury, not to discuss any other altercations or incidents of physical assault involving Caballero prior to March 31, 2009.

On appeal, Caballero argues that the trial court abused its discretion in denying the motion for a mistrial. When evaluating the trial court's denial of a motion for a mistrial, we consider three factors: (1) the severity of the underlying misconduct, (2) the curative measures adopted by the trial court, and (3) the certainty of the conviction absent the misconduct. *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). In this case, under the first factor, the severity of the misconduct was limited to the statement that "you are not going to hit me in my face ever again in your life," constituting one passing reference in Hernandez's testimony. Under the second factor, the trial court took the curative measure of instructing the witness not to discuss such acts again. Finally, under the third factor, the misconduct does not call into question the certainty of the conviction. The jury heard extensive testimony about the incident that took place on April 1, 2009, including testimony of the alleged victim, an eyewitness, and the police officer investigating the scene. All three witnesses testified that Caballero had placed his hands near Hernandez's neck and bent her over a guardrail on the bridge.

After weighing these factors, we conclude that the trial court did not abuse its discretion in denying the motion for a mistrial due to Hernandez's allusion to some other assaultive act.

*Video Recording*

Next, Caballero argues that the trial court abused its discretion by failing to grant a continuance or a mistrial after the discovery of the patrol-car recording of the incident. During the

State's case-in-chief, officer Dennis testified that, while the camera in his patrol car would normally have recorded the incident, he had "no idea" whether any recording existed at the time of trial. Later on the day of trial, however, it was discovered that a recording did exist. A copy of the recording was provided by APD that same day, after the State and the defense had conditionally closed. After the prosecution and defense had an opportunity to view the recording, the State attempted to admit the recording into evidence. Defense counsel objected to the admission of the recording, as the recording had not been produced prior to trial as required by the standing discovery order. The trial court sustained the objection. Defense counsel then moved in writing for a continuance, stating that the lack of notice to the defendant of the existence of the recording prejudiced the defendant's ability to prepare his case. Defense counsel also orally moved for a mistrial. The trial court denied both motions.

For this Court to find that the trial court abused its discretion in denying the motion for a continuance, there must be a showing that the defendant was actually prejudiced by the denial of his motion. *Janecka*, 937 S.W.2d at 468. In this case, Caballero contends that additional time to view the recording "would have [a]ffected Appellant's entire trial strategy." Such a bare assertion, however, does not demonstrate how the defense was prejudiced by the denial of its motion for a continuance.[9] Further, the recording, which shows the officer driving onto the scene and appears to

---

[9] Appellate counsel points this Court to the trial record, in which trial counsel argued to the trial court that failure to turn over the video prejudiced the defense's ability to prepare its case. Specifically, trial counsel argued that the video shows the location of the incident to be roughly 100 yards from where trial testimony showed it to be, on a less dangerous area of the bridge. Even if true, such a fact does not bear directly on whether an assault occurred. Further, while defense counsel indicated that frame-by-frame evaluation of the video might have undermined Dennis's testimony that he saw Caballero with his hands on Hernandez's neck, the recording of the struggle lasts only a second or two and is shrouded in darkness, thereby lessening its evidentiary value.

capture Caballero and Hernandez struggling, does not present any clearly exonerating evidence. Accordingly, we conclude that the trial court did not abuse its discretion in denying the motion.

Caballero also argues that the trial court abused its discretion in denying his motion for a mistrial based on the video. As above, we weigh three factors in evaluating the trial court's denial of a motion for a mistrial: (1) the severity of the underlying misconduct, (2) the curative measures adopted by the trial court, and (3) the certainty of the conviction absent the misconduct. *Archie*, 221 S.W.3d at 700. Regarding the severity of the misconduct, we agree with the trial court's observation that there was a lapse with regard to the State's duty to provide evidence to the defendant under the discovery order entered by the trial court. However, the trial court's curative measure—refusing to admit the video into evidence—serves to mitigate prejudice to the defense. In addition, the fact that defense counsel was not provided additional time to further view the video does not undermine the certainty of the conviction. The video was not admitted into evidence or shown to the jury. While Caballero argues on appeal that having the recording in advance "would have [a]ffected Appellant's entire trial strategy," he does not point to any specific support for this statement, nor does the video itself provide clear clues as to how counsel's strategy might have changed had the video been provided earlier.[10] Accordingly, weighing the factors, we conclude that the trial court did not abuse its discretion in denying the defense's motion for a mistrial based on the State's failure to timely provide the video. Caballero's third point of error is overruled.

---

[10] We further note that, at the hearing on the defendant's motion for a new trial, defense counsel did not indicate how his preparation for trial would have changed had he received the video prior to trial. The hearing occurred several months after the trial, giving defense counsel sufficient time to fully review the video before the hearing.

14

**CONCLUSION**

Finding no reversible error, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   May 28, 2010

Do Not Publish

15