In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00045-CR

                                                ______________________________

 

 

                      CHRISTOPHER CHARLES MEADOWS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                          On Appeal from the County
Court at Law #1

                                                             Gregg County, Texas

                                                         Trial Court
No. 2010-0592

 

                                                             
                                     

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            City
of Kilgore Police Officer Joseph Harrison saw a vehicle driven by Christopher
Charles Meadows turn off of Stone Road and use a roadway that the officer
believed was a private driveway (the Roadway) to reach Utzman
Street.  Believing that Meadows failed to
stop in the Roadway and thus committed a traffic violation, Harrison turned on
his overhead flashing lights to initiate a traffic stop.  Despite the flashing lights behind him,
Meadows failed to stop, but continued to drive until he reached his nearby
home.  After seeing signs that Harrison
believed indicated that Meadows was intoxicated, Harrison placed Meadows under
arrest.  Meadows refused to submit to a
breath test, so Harrison obtained a search warrant for a sample of Meadows’
blood to be used in testing for alcohol levels.  Because the hospital in Kilgore was
unavailable to him, Harrison transported Meadows to a hospital in nearby
Longview (also in Gregg County) where Meadows’ blood was drawn.  Tests on that blood revealed a blood-alcohol
level consistent with intoxication, and he was charged by information with a
second offense driving while intoxicated (DWI) and with fleeing from a police
officer.  After the trial court denied
his motion to suppress the evidence gained from the stop and search, Meadows
pled guilty to both charges.

            Meadows
appeals from his conviction for fleeing, arguing that the trial court erred by
failing to grant his motion to suppress because:  (1) the officer lacked reasonable suspicion to
stop him, as the Roadway was a public road; (2) the officer lacked reasonable
suspicion to stop him, as Meadows could have stopped in the Roadway; and (3)
the blood draw, being a search, exceeded the officer’s geographic jurisdiction.


            We
affirm the judgment of the trial court because:  (1) the officer had reasonable suspicion to
believe the Roadway was a parking lot, driveway, or private road; (2) the
officer had reasonable suspicion to believe that Meadows failed to stop while
traversing the Roadway; and (3) a city police officer of a home-rule city may
execute a valid search warrant anywhere within the county where he is an
officer. 

Background Facts

            In
the early morning hours of February 7, 2010, Kilgore Police Officer Joseph
Harrison observed two vehicles parked in a church parking lot; although the
circumstances seemed somewhat suspicious to him, he did not stop to make
inquiry of the drivers because the church was just outside the city limits of
Kilgore.  He then saw the two vehicles
leave the parking lot and he followed them. 
Harrison lost contact with one of the vehicles, but continued to follow
the remaining vehicle, a truck driven by Meadows.  

            As
Harrison followed Meadows’ truck, he saw it turn off Stone Road onto the
Roadway, (which Harrison believed to be a private drive).  The Roadway ran between Stone Road and Utzman Street, and it provided access to a car wash and a
bank’s automatic teller machine (ATM). 
As Harrison continued on Stone Road, he briefly lost sight of Meadows’
truck, but after reasoning that no one would likely wash a car at 1:00 a.m.,
Harrison turned around and followed Meadows down the “driveway” (the
Roadway).  Upon catching up to Meadows’
truck, the officer illuminated his overhead lights and tried to stop Meadows
for violating Section 545.423 of the Texas Transportation Code, which prohibits
drivers from driving through a private driveway, parking lot, or business or
residential entrance without stopping the vehicle.  Tex.
Transp. Code Ann. § 525.423 (West 2011). 
Meadows ignored the lights on the police car and failed to stop,
continuing to drive until he reached his home, about 0.4 miles away.  Harrison arrested Meadows for fleeing a
police officer.  During this arrest,
although Harrison observed signs of possible intoxication (slurred speech,
alcohol on breath, red/glassy eyes, unsteady on his feet), he did not conduct
field-sobriety tests at that time; instead, he took Meadows to the Kilgore
Police Department station.  After Meadows
refused to perform field-sobriety tests or provide a breath specimen, Harrison
obtained a search warrant for a blood specimen. 
Harrison transported Meadows from the police station to Good Shepherd
Medical Center in Longview, Texas, to obtain a blood sample (the test results
of which showed elevated blood-alcohol levels). 


            Meadows
was charged by information with DWI, second offense, and fleeing from a police
officer.  Meadows moved to suppress the
evidence gained from the stop and search on the grounds that the traffic stop
detention and blood draw were both unlawful.  After the trial court refused to grant the
suppression motion, Meadows pled guilty to both charges.  On the DWI charge, Meadows was sentenced to
one year’s confinement, but was granted community supervision for a period of
two years and was ordered to pay court costs. 
As conditions of his community supervision, he was ordered to pay an
$850.00 fine and serve one seventy-two-hour period in jail.  On the fleeing charge, he was assessed a
$350.00 fine and one year’s confinement, these being likewise subject to
community supervision for a period of one year. 

Standard of Review

            We
review a trial court’s decision on a motion to suppress evidence by applying a
bifurcated standard of review.  Graves v. State, 307 S.W.3d 483, 489
(Tex. App.—Texarkana 2010, pet. ref’d); Rogers v. State, 291 S.W.3d 148, 151
(Tex. App.—Texarkana 2009, pet. ref’d). While we
defer to the trial court on its determination of historical facts and
credibility, we review its application of the law and determination on
questions not turning on credibility de novo. Carmouche v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997); Villarreal v. State,
935 S.W.2d 134, 138 n.5 (Tex. Crim. App. 1996); Graves, 307 S.W.3d at 489.  We
also afford deference to a trial court’s “application of law to fact
questions,” also known as “mixed questions of law and fact,” if the resolution
of those questions turns on an evaluation of credibility and demeanor.  Guzman,
955 S.W.2d at 89.  In other words, we
give almost total deference to the trial court in determining what the actual
facts are, and then we review de novo whether those facts are sufficient to
give rise to reasonable suspicion.  Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001) (determinations of reasonable suspicion and probable
cause should be reviewed de novo on appeal) (citing Ornelas v. United States, 517 U.S. 690 (1996)).

            Since
all the evidence is viewed in the light most favorable to the trial court’s
ruling, we are obligated to uphold the denial of Meadows’ motion to suppress if
it was supported by the record and was correct under any theory of law
applicable to the case.  Carmouche, 10
S.W.3d at 327–28; State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

            The Officer Had Reasonable
Suspicion to Believe the Roadway Was a Private Drive

            Officer
Harrison stopped Meadows for driving through a private driveway without
stopping.  As part of his first point of
error, Meadows argues that the trial court erred in denying his motion to
suppress, because the Roadway in question was actually a part of Utzman Street, a public road, and therefore the officer
pulled him over for an act that did not constitute a traffic offense.  Meadows argues that because his actions did
not amount to a traffic offense, the officer lacked reasonable suspicion to
stop him.  

            A
law enforcement officer may lawfully stop and detain a person for a traffic
violation committed in the presence of the officer.  Garcia
v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); Zervos v. State, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref’d).  “A routine
traffic stop resembles an investigative detention.”  State v.
Cardenas, 36 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  The United
States Supreme Court in Terry v. Ohio
established the test for investigative detentions.  Terry
established a two-pronged test for investigative detentions.  Terry v.
Ohio, 392 U.S. 1, 19–20 (1968).  To
determine the reasonableness of an investigative detention, the court must
inquire:  “(1) whether the officer’s
action was justified at its inception; and, (2) whether it was reasonably
related in scope to the circumstances which justified the interference in the
first place.”  Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); see Terry, 392 U.S. at 19–20.

            Meadows
challenges the first prong of the test. 
“Under the first prong, ‘the police officer must be able to point to
specific and articulable facts which, taken together
with rational inferences from those facts, reasonably warrant that intrusion.’”
 Id.
(quoting Terry, 392 U.S. at 21).  These facts must be more than a mere hunch or
suspicion.  Id. at 244.  Whether the
officer’s suspicion was reasonable is evaluated based on “an objective standard
that disregards any subjective intent of the officer making the stop and looks
solely to whether an objective basis for the stop exists.”  Ford v.
State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  The specific, articulable
facts, along with rational inferences from those facts, must allow the officer
to reasonably conclude the person detained actually is, has been, or soon will
be engaged in criminal activity.  United States v. Sokolow,
490 U.S. 1, 10 (1989).

            In
a motion to suppress setting, the propriety of an arrest or detention need not
be proven beyond a reasonable doubt.  See Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001); Lalande v. State, 676 S.W.2d 115, 117–18, 117
n.4 (Tex. Crim. App. 1984).  In the
recent case of York v. State, the
Texas Court of Criminal Appeals held that the State’s standard of proof is “the
one that applies to most constitutional suppression issues: preponderance of
the evidence.”[1] 342
S.W.3d 528, 543 (Tex. Crim. App. 2011) (citations and footnotes omitted).  The court, however, cautioned that appellate
courts should not defer to a police officer’s legal conclusions. Garcia, 43 S.W.3d at 531.  Since Garcia,
several Texas courts of appeals have noted an officer’s incorrect understanding
of the law does not give rise to a reasonable suspicion.  Fowler
v. State, 266 S.W.3d 498 (Tex. App.—Fort Worth 2008, pet. ref’d); Goudeau v. State,
209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.); see United States v. Miller, 146 F.3d
274, 279 (5th Cir. 1998).  The Third
Circuit has explained this distinction succinctly as follows:

[M]istakes of fact are rarely fatal to an officer’s
reasonable, articulable belief that an individual was
violating a traffic ordinance at the time of a stop, many of our sister
circuits have held that mistakes of law—even reasonable ones—can render a
traffic stop “unreasonable” under the Fourth Amendment.

 

United States v. Delfin–Colina,
464 F.3d 392, 398 (3d Cir. 2006).  We
believe the Third Circuit’s holding explains the distinction made by the Texas
Court of Criminal Appeals in Garcia.  See Madden v. State, 242 S.W.3d 504, 508 n.7
(Tex. Crim. App. 2007) (noting factual issue was not whether defendant was
actually speeding, but whether officer had reasonable belief defendant was
speeding). 

            The
charge lodged against Meadows was not the violation of the Texas Transportation
Code in crossing over a private driveway (in common vernacular, “corner
cutting”), but fleeing from a police officer and DWI.  Therefore, the question here is not whether
Meadows actually violated the traffic law but, rather, the objective
reasonableness of the officer’s suspicion that Meadows had violated it.  See
id. (noting factual issue not whether
defendant was actually speeding, but whether officer had reasonable belief
defendant was speeding).  Specifically,
based on the facts presented, does a correct interpretation of the law allow a
police officer to reasonably suspect that the Roadway was a private drive,
parking lot, or other private road? 

            Here,
there is evidence that the Roadway was a public road.[2]  Maps from internet sites Google and Planetware label the Roadway as “Utzman
Street.”  There are several traffic
control signs on the Roadway, including “no left turn,” “one way,” and “no
right turn.”  Officer Harrison admitted
that the signs appear to be “public – an actual official traffic-control sign,”
rather than signs that a private entity would erect.  At the time of the stop, Harrison was unaware
that the Roadway had traffic signs on it. 


            There
is also evidence that the Roadway was a private road.  Harrison testified that the Roadway was “not
on our maps that we use in the police department as a street.  It’s just a driveway.”  However, nothing in the record indicates that
Harrison had memorized or consulted these police maps prior to the stop.[3]  Harrison had personal experience with the
Roadway in dispute because he had “used that ATM before.”[4]  

            Obviously,
reasonable minds could differ as to whether the Roadway was actually a public
roadway or a private one.  Considering
the officer’s prior experience in using the Roadway and the conflicting
evidence which supports both the view that it was public and that it was
private, we find that Harrison had reasonable suspicion to believe that the
Roadway was a private drive. Therefore, we overrule this portion of Meadows’
first point of error. 

            The Officer Had Reasonable
Suspicion to Believe that Meadows Failed to Stop While Traversing the Roadway

 

            As
a part of his first point of error, Meadows contends that the trial court erred
by denying his motion to suppress because the officer lacked reasonable
suspicion that Meadows failed to stop while traversing the Roadway.  Applying the standards discussed above (and
assuming there was sufficient evidence for the officer to reasonably believe
the Roadway to be a private drive), the issue is whether the facts presented in
the record are sufficient to establish reasonable suspicion that Meadows failed
to stop.  See Garcia, 43 S.W.3d at 531. 


            When
Meadows turned from Stone Road onto the Roadway, Harrison turned off his video
camera and continued along Stone Road for a moment before making a U-turn and
turning down the Roadway to follow Meadows. 
He saw that Meadows “had made it all the way to Utzman
Road,” so Harrison “got on it,”[5] and
once again got behind Meadows and activated his overhead lights and video
camera.  Harrison testified that the lights
and camera were turned back on at the point Meadows was turning from Utzman Street onto Parkview.  He testified that he only lost sight of
Meadows for “probably five or ten seconds,” but he admitted that it would not
surprise him to find out that his video camera had remained turned off for
almost a full minute.  He did not believe
that Meadows “had stopped and then started going again,” so he attempted to
pull him over for driving through private property.  

            Here,
even though the video camera was turned off for almost a minute, there is
evidence that Harrison lost visual contact with Meadows for only a few seconds
and that by the time Harrison caught up to Meadows, he had left the Roadway,
entered Utzman Street, and was turning onto
Parkview.  We find that it is reasonable
under these circumstances for an officer to suspect that Meadows lacked an
adequate amount of time to stop his truck and then start moving again.
Accordingly, we overrule this point of error. 

            A City Police Officer
May Execute a Valid Search Warrant Anywhere in the County

            In
his second point of error, Meadows contends that denying his motion to suppress
was error because Harrison lacked the authority to execute the search warrant
outside the City of Kilgore.  

            Harrison
obtained a search warrant from a Kilgore city judge for a sample of Meadows’
blood.  Because the Kilgore hospital was
closed, Harrison transported Meadows outside the City of Kilgore to Good
Shepherd Medical Center in Longview, where Meadows’ blood sample was taken.  

            The
search warrant directs “any Sheriff or any Peace Officer of Gregg County,
Texas, or any Peace Officer of the State of Texas,” to seize Meadows and carry
him to a “physician, registered nurse, or medical laboratory technician skilled
in the taking of HUMAN BLOOD . . . and the said physician, registered nurse, or
laboratory technician shall take” samples of Meadows’ blood.  There is no dispute that the search warrant
itself is valid county-wide, that Harrison is a peace officer of Gregg County,
that both Kilgore and Longview are municipalities within Gregg County, or that
the sample was taken in a proper manner. 


            Meadows’
sole argument rests upon the fact that the Texas Local Government Code
specifically grants general-law municipal police departments countywide
jurisdiction, but does not similarly grant this same authority to home-rule
municipalities, such as Kilgore.[6]
Thus, Meadows maintains, police departments of home-rule municipalities have
only city-wide jurisdiction to execute search warrants.  

            Section
341.001 of the Texas Local Government Code, applying to Type A municipalities,
states:

            (e)        A
police officer has:

                        (1)        the
powers, right, duties, and jurisdiction granted to or imposed on a peace
officer by the Code of Criminal Procedure; and

                        (2)        other powers and duties prescribed by
the governing body.

            (f)        A
police officer may serve in each county in which the municipality is located
all process issued by a municipal court.

 

Tex. Loc. Gov’t Code Ann. § 341.001 (West 2005).  This blanket grant of statutory authority
given to police officers in Type A municipalities contrasts with Section
341.003 of the Local Government Code, entitled “Police Force of a Home–Rule
Municipality,” which says only that “[a] home-rule municipality may provide for
a police department.”  Tex. Loc. Gov’t Code
Ann. § 341.003 (West 2005). 

            If
a police officer’s geographic jurisdiction is not found in some statute, it is
controlled by the common law.  State v. Kurtz, 111 S.W.3d 315 (Tex.
App.—Dallas 2003), aff’d,
152 S.W.3d 72 (Tex. Crim. App. 2004) (traffic stop improper because offense
occurred outside city limits); see Angel v. State, 740 S.W.2d 727, 732–33
(Tex. Crim. App. 1987) (relying on former revised civil statutes Articles 998
and 999, held that officer’s jurisdiction is county-wide, but case was later
superseded by statute, and it continues to be cited today for holding that
jurisdiction is determined by common law if it is not found in statute).  At common law, a police officer’s
jurisdiction was confined to the limits of his city.  See
Landrum v. State, 751 S.W.2d 530, 531 (Tex. App.—Dallas 1988), pet. ref’d,
795 S.W.2d 205 (Tex. Crim. App. 1990) (per curiam).  Thus, unless there exists some statutory
authority for extension of that jurisdiction, the city officer’s jurisdiction
was limited to the city’s geographical limits.  See
Angel, 740 S.W.2d at 732.  However,
we find the Kurtz line of cases to be
distinguishable from the present case because the investigative stop in Kurtz was a detention, falling under the
powers of arrest, rather than a search, such as we have here.

            Our
sister court in Fort Worth directly addressed this issue in $27,877.00
Current Money of United States v. State, and determined that “a home-rule
municipal police force’s jurisdiction for the execution of a valid search
warrant is at least as broad as that of a general-law municipality, that is, at
least countywide.”  331 S.W.3d 110, 117
(Tex. App.—Fort Worth 2010, pet. denied) (citing Brother v. State, 85 S.W.3d 377, 385 (Tex. App.––Fort Worth 2000),
aff’d, 166
S.W.3d 255 (Tex. Crim. App. 2005) (holding jurisdiction of a Type A
municipality police officer is “at least county-wide”); see also Proctor v. Andrews, 972 S.W.2d 729, 733 (Tex. 1998) (“[A]
home rule city . . . has all the powers of the state not inconsistent with the
Constitution, the general laws, or the city’s charter . . . .”).  The Fort Worth court reasoned: 

Home-rule
municipalities are different from general-law municipalities because a “home
rule city derives its power not from the Legislature but from Article XI,
Section 5, of the Texas Constitution.”  Lower Colo. River Auth. v. City of San
Marcos, 523 S.W.2d 641, 643 (Tex. 1975); see also Tex. Const. art.
XI, § 5.  They possess “the full power of
self government and look to the Legislature not for grants of power, but only
for limitations on their power.”  Dallas Merchs.’
& Concessionaire’s Ass’n v. City of Dallas,
852 S.W.2d 489, 490–91 (Tex. 1993).  A
home-rule municipality’s powers may therefore be limited by statute, but only
when the legislature’s intention to do so appears “with unmistakable clarity.”  Proctor
v. Andrews, 972 S.W.2d 729, 733 (Tex. 1998).

 

The
reason that section 341.003 does not grant home-rule police countywide
jurisdiction is because home-rule municipalities do not receive their grants of
power from the legislature.  See Lower Colo. River Auth., 523 S.W.2d at
643. General-law municipalities, on the other hand, do.  See Tex.
Dep’t of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 645 (Tex. 2004)
(“General-law municipalities . . . are political subdivisions created by the
State and, as such, possess those powers and privileges that the State
expressly confers upon them.”).  We do
not see in local government code sections 341.001 or 341.003, or in any other
statute, any clear intent by the legislature to restrict a home-rule
municipality police force to a jurisdiction any less than that of a general-law
municipality.

 

$27,877.00 Current Money of United States,
331 S.W.3d at 115–16.

            It
is the duty of every peace officer, when a search warrant is duly delivered to
him, to “execute it without delay.”  Tex. Code Crim. Proc. Ann. art. 18.06 (West
2005).  A search warrant is sufficient if
it “command[s] any peace officer of the proper county to search forthwith the
person, place, or thing named.”  Tex. Code Crim. Proc. Ann. art. 18.04
(West 2005).  The search warrant in this
case authorized “the Sheriff or any Peace Officer of Gregg County, Texas or any
Peace Officer of the State of Texas” to conduct the search described within it.
 City police officers are “peace
officers” as defined by Article 2.12(3) of the Texas Code of Criminal
Procedure.  Tex. Code Crim. Proc. Ann. art. 2.12(3) (West 2010).  The Texas Penal Code does not define the
phrase “of the county” or “of the State of Texas,” but since a warrant must
command a peace officer “of the proper county,” we take “Peace Officer of Gregg
County” to mean a peace officer with jurisdiction throughout Gregg County.  See $27,877.00 Current Money of United States,
331 S.W.3d at 117.  

            We
agree with the well-reasoned opinion in $27,877.00 Current Money of United States,
and hold that a home-rule municipal police force’s jurisdiction for the
execution of a valid search warrant is at least countywide.  Because the search warrant in this case was
issued in Kilgore, in Gregg County, by a magistrate with jurisdiction in Gregg
County, to a Kilgore police officer with jurisdiction in Gregg County, we hold
that Officer Harrison acted within his duty and jurisdiction to accept the
search warrant and execute it. 
Accordingly, we overrule this point of error.

            We
affirm the trial court’s judgment.  

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          October 19, 2011

Date
Decided:             November 15, 2011

 

Publish            

 











[1]In York, the
court noted that “[i]n at least one instance--the
voluntariness of consent--the burden of proof is ‘clear and convincing
evidence.’”  342 S.W.3d at 543 n.85
(citations omitted). 

 





[2]Formal
dedication of a roadway is only one means by which a roadway can become a
public thoroughfare.  There are other
ways, including prescriptive easement, Allen
v. Keeling, 613 S.W.2d 253, 254 (Tex. 1981), and implied dedication, Lindner v. Hill, 691 S.W.2d 590, 592
(Tex. 1985).

 





[3]There
is no sign on the Roadway labeling the known public streets at either end of
the Roadway, and no “stop” or “yield” signs at either end of the Roadway.  The surface of the Roadway is the same type
and pattern as that of the bank’s parking lot. 
However, there is no evidence in the record that Harrison was aware of,
or that he considered, such evidence at the time of the stop. 

 





[4]We
note that Harrison testified that the presence of the ATM on the Roadway “did
not enter [his] mind until” it was brought up at Meadows’ license revocation
hearing.  However, Harrison was not
testifying regarding the public or private nature of the Roadway, but rather,
the initial reason he believed Meadows had turned onto the Roadway in the first
place—“I figured he was going to wash his car.” 






[5]We
presume “got on it” to mean that Harrison sped up quickly, that is, he “gunned
it,” “floored it,” or “put the pedal to the metal.”  





[6]According to the City of Kilgore’s website, http://cityofkilgore.com/government,
Kilgore is a home-rule municipality, and on our own initiative, we take
judicial notice of that fact.  See Tex.
R. Evid. 201(b)(2), (c), (d), (f) (at any
stage of proceeding, court in its discretion and on its own motion can take
judicial notice of facts capable of accurate and ready determination by resort
to sources whose accuracy cannot reasonably be questioned); see also Watkins v. State, 245
S.W.3d 444, 455 (Tex. Crim. App. 2008).

 








tion to the record, and cites only one case, Corzelius,
relevant to the separation of powers doctrine. The remaining pages claimed by SOS as
part of its briefing on this issue actually concern whether notice is an adjudicative fact or
a legislative fact.
          SOS appears to contend that the three pages discussing the difference between
legislative and adjudicative facts is part of their separation of powers argument. Although
the separation of powers section of its brief immediately precedes the discussion of
legislative and adjudicative facts, the two discussions are contained in separate sections
and there is little indication that both sections concern separation of powers. Further, only
one of the cases cited in the remaining pages concerns the separation of powers
doctrine.



          We discussed the difference between adjudicative and legislative facts in a footnote
in our original opinion. Adjudicative facts are facts particular to a case while legislative
facts are facts related to legal reasoning, the law-making process, and policy
determination. O'Connell v. State, 17 S.W.3d 746, 749 (Tex. App.—Austin 2000, no pet.);
see Ashmore, 635 S.W.2d at 423.


 Courts should defer to the Legislature's findings of
legislative facts, but courts are not required to defer to the determination of adjudicative
facts. See O'Connell, 17 S.W.3d at 749. 
          Even if the facts at issue are adjudicative facts, such a classification would not be
determinative of whether the enrolled-bill rule violates the separation of powers
doctrinethe distinction is not the standard for determining a separation of powers
violation. Whether the facts are adjudicative facts or legislative facts may prove relevant
concerning whether the court must defer to the findings of the Legislature, but the
classification is not determinative of whether the enrolled-bill rule violates the separation
of powers doctrine. As we stated in our original opinion, the enrolled-bill rule is a rule of
admissibility. 
          We agree with SOS that the standard for whether an issue has been adequately
briefed should not be rigid or draconian. Under certain circumstances, a single case may
prove to be "appropriate citations to authorities and to the record." See Tex. R. App. P.
38.1(h). Whether an issue has been adequately briefed depends on the complexity of the
issue and the extent courts have addressed the issue. The separation of powers doctrine
has been extensively litigated in courts. Although SOS cited the above cases, its argument
consists exclusively of conclusory statements that the enrolled-bill rule violates the
separation of powers doctrine. None of the authorities cited involve similar circumstances.
We adhere to our earlier conclusion that SOS' separation of powers argument has been
inadequately briefed.



Remand of Attorney's Fees
          Next, SOS contends this Court erred in affirming the trial court's determination that
awarding attorney's fees to Lazy 9 was just and equitable. According to SOS, this Court
should have remanded this issue to the trial court for a reassessment of attorney's fees in
light of our holdings that (1) SOS had standing to bring its lawsuit; (2) the lawsuit was not
frivolous; (3) the evidence was insufficient that the lawsuit was brought for an improper
purpose; and (4) SOS' attorney should not have been sanctioned. SOS argues that our
refusal to vacate the attorney's fees and remand for a reassessment of those fees
assumes that the trial court's erroneous determination of these issues played no role in the
level of attorney's fees that it determined to be equitable and just.
          All of the cases cited by SOS, save one, involved a complete reversal. See City of
Harlingen v. Alvarez, No. 13-03-00169-CV, 2005 Tex. App. LEXIS 7976 (Tex.
App.—Corpus Christi Sept. 29, 2005, no pet. h.) (mem. op.); Scottsdale Ins. Co. v. Travis,
68 S.W.3d 72, 77 (Tex. App.—Dallas 2001, pet. denied); Scott v. Cannon, 959 S.W.2d
712, 723 (Tex. App.—Austin 1998, pet. denied). The remaining case cited by SOS
involved a more extensive reversal than in this case. In Securtec, this Court held there was
a genuine issue of material fact concerning whether Gregg County violated the statutory
bidding requirements and, therefore, summary judgment was inappropriate. Securtec, Inc.
v. County of Gregg, 106 S.W.3d 803, 813–14 (Tex. App.—Texarkana 2003, pet. denied)
(part of judgment affirmed and severed, remaining part reversed and remanded for new
trial). This Court ordered a reconsideration of attorney's fees "if the trial court does find in
favor of Securtec on remand." Id. at 817. Because Securtec reversed a significant portion
of the trial court's judgment, it is clearly distinguishable from the current case.
          In Ranger Ins. Co. v. Ward, 107 S.W.3d 820 (Tex. App.—Texarkana 2003, pet.
denied), the appellant urged the Court to reverse the award of attorney's fees and remand
to the trial court for reconsideration of whether the award was equitable. This Court
rejected the appellant's argument because "overall, the trial court did not err in its
interpretation and application of the law" and therefore, "it did not abuse its discretion in
awarding attorney's fees to the Landowners." Id. at 830. 
          Similar to Ranger Insurance, the trial court in this case committed some errors, but
the trial court's judgment was correct overall. As SOS correctly asserts, our opinion
undermined at least six of the trial court's findings of facts and conclusions of law. 
However, five of these findings are entirely concerned with the sanctions assessed against
William G. Bunch. The findings concerning sanctions against Bunch did not necessarily
influence the trial court's conclusions concerning whether the award of attorney's fees was
equitable or just. The remaining finding concerns whether the quo warranto doctrine
prevented SOS from bringing suit. It is apparent the trial court did not rely extensively on
the finding that quo warranto prevented SOS from bringing suit. If SOS lacked standing
to bring suit due to quo warranto, the appropriate remedy would have been dismissal,
rather than rendering final judgment in favor of Lazy 9. It is, therefore, apparent the trial
court relied primarily on its other findings. We do not believe our opinion modified the trial
court's judgment sufficiently to affect the trial court's determination of whether the award
of attorney's fees to Lazy 9 was equitable and just. 
H.B. 3565 Unconstitutional on its Face
          Last, SOS contends this Court should grant rehearing as to whether H.B. 3565
constitutes an unconstitutional delegation on its face. Compare Tex. Const. art. XVI, § 59
with Act of May 28, 2003, 78th Leg., R.S., ch. 1158, 2003 Tex. Gen. Laws 3268. 
According to SOS, the twenty-day notice requirement contained in the bill causes the bill
to be unconstitutional on its face since it conflicts with the thirty-day notice requirement
contained in the Texas Constitution. In addition, SOS contends the bill is unconstitutional
because the Texas Constitution requires the notice to local governmental entities to be at
least thirty days before the election, but the bill only requires notice no later than thirty days
after the election. 
          The Texas Constitution requires notice must be given of a bill which creates a
conservation and reclamation district. Section 59(d) of the Texas Constitution provides as
follows:
No law creating a conservation and reclamation district shall be passed
unless notice of the intention to introduce such a bill setting forth the general
substance of the contemplated law shall have been published at least thirty
(30) days and not more than ninety (90) days prior to the introduction thereof
in a newspaper or newspapers having general circulation in the county or
counties in which said district or any part thereof is or will be located and by
delivering a copy of such notice and such bill to the Governor who shall
submit such notice and bill to the Texas Water Commission, or its successor,
which shall file its recommendation as to such bill with the Governor,
Lieutenant Governor and Speaker of the House of Representatives within
thirty (30) days from date notice was received by the Texas Water
Commission. Such notice and copy of bill shall also be given of the
introduction of any bill amending a law creating or governing a particular
conservation and reclamation district if such bill (1) adds additional land to
the district, (2) alters the taxing authority of the district, (3) alters the authority
of the district with respect to the issuance of bonds, or (4) alters the
qualifications or terms of office of the members of the governing body of the
district. 

Tex. Const. art. XVI, § 59(d). Section59(e) requires notice as provided in subsection (d)
to the county commissioners court of the affected counties. See Tex. Const. art. XVI,
§ 59(e). 
          H.B. 3565, though, provides that Lazy 9's board of directors must give notice of an
election for division of the district "not later than the 20th day before the election." Act of
May 28, 2003, 78th Leg., R.S., ch. 1158, § 14, 2003 Tex. Gen. Laws 3268, 3274. In
addition, the board must provide notice "not later than the 30th day after the date of the
election" to the Texas Commission on Environmental Quality, the attorney general, the
commissioners court of each county, and any municipality with extraterritorial jurisdiction
over the land within each new district. Id. 
          It is not entirely clear that the notice provision of the Texas Constitution applies to
the division of a district under H.B. 3565. However, it is not necessary for us to decide that
issue. Assuming the constitutional notice provision does apply, SOS' argument that our
opinion erred in failing to hold the bill was unconstitutional on its face still fails. SOS did
not raise this issue until its motion for rehearing, and the notice provisions of the bill do not
foreclose proper notice under the Texas Constitution.
          SOS did not argue the bill was unconstitutional on its face until its motion for
rehearing. Although SOS did argue that Lazy 9's ability to divide violates the notice
requirement of the Texas Constitution, it did not advance in its brief or at oral argument the
contention that the differences in the statute's notice requirements from the Texas
Constitution's notice requirements cause the bill to be unconstitutional on its face. This
argument cannot be raised at this point in the proceedings. "Rehearing is not an
opportunity to test alternative arguments after finding other arguments unsuccessful." ICM
Mortgage Corp. v. Jacob, 902 S.W.2d 527, 535 (Tex. App.—El Paso 1994, writ denied)
(op. on reh'g); see Cont'l Dredging, Inc. v. De-Kaizered, Inc., 120 S.W.3d 380, 400 (Tex.
App.—Texarkana 2003, pet. denied) (op. on reh'g). A motion for rehearing is an
inappropriate time to raise new arguments. 
          Even if this issue had been raised, the difference between the notice requirements
under H.B. 3565 and Article XVI, Section 59 of the Texas Constitution does not render the
bill unconstitutional on its face. Although the bill contains different notice requirements, the
bill does not conflict with the notice requirement contained in the Texas Constitution, if
applicable. While it is a wise policy for statutes to comply with minimum constitutional
requirements, there is nothing in the statute which would prohibit providing the appropriate
notice required by the Texas Constitution. Lazy 9 can still comply with the notice
requirements of the Texas Constitution, if applicable, even though the notice provisions
differ from the notice requirements of H.B. 3565. We overrule SOS' contention that the bill
is unconstitutional on its face.
Conclusion
          The trial court did not err in excluding evidence concerning notice under
subsection (d) of Article XVI, Section 59 of the Texas Constitution. Because SOS failed
to cite sufficient authority, advance any legal analysis, or apply the appropriate standards
to the facts of this case, the separation of powers argument was inadequately briefed. Our
opinion did not modify the trial court's judgment sufficiently to affect the trial court's
determination of whether the award of attorney's fees to Lazy 9 was equitable and just. 
Therefore, we reject SOS' argument that the issue of attorney's fees must be remanded
to the trial court. We also reject SOS' argument that H.B. 3565 constitutes an
unconstitutional delegation on its face. It is improper for SOS to raise new issues in a
motion for rehearing. At any rate, the differences between the notice requirements under
H.B. 3565 and Article XVI, Section 59 of the Texas Constitution do not render the bill
unconstitutional on its face. 
          Accordingly, we overrule SOS' motion for rehearing.



                                                                Donald R. Ross
                                                                Justice
 
Date:  July 18, 2006